IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANDREW WOODS<br>11600 Court of Palms, #704<br>Ft. Myers, FL 33908 | *<br><br>* | |
| Plaintiff, | * | |
| v. | * | |
| ANTIQUORUM USA, INC.<br>805 Third Avenue, 10th Floor<br>New York, NY 10022 | *<br><br>* | Civil Action No.: _____ |
| Defendant | * | |
| SERVE ON: | * | |
| Osvaldo Patrizzio<br>C/O Antiquorum USA, Inc.<br>Registered Agent<br>595 Madison Avenue<br>New York, NY 10022 | *<br><br>*<br><br>* | |
| ******** | * | ******** |

## COMPLAINT

Andrew Woods, by and through his attorneys Gary R. Jones, Danielle M. Vranian and Baxter, Baker, Sidle, Conn & Jones, P.A. hereby files this Complaint against Antiquorum USA, Inc., and in support thereof, state as follows:

### JURISDICTION AND VENUE

1. This Court has venue and jurisdiction over these proceedings pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and is between citizens of different states.

## THE PARTIES

2. Plaintiff is a resident of Florida with his residency located in Fort Myers, Florida.

3. Defendant is a New York corporation in good standing with its principal place of business located in New York, New York.

## FACTUAL ALLEGATIONS

4. On October 3, 2016, Antiquorum USA, Inc. ("Antiquorum") entered into a Consignment Agreement with Mr. Woods which detailed the obligations of both Mr. Woods as the Consignor and Antiquorum as the consignee. *See* Exhibit 1, Consignment Agreement, hereinafter "Agreement".

5. Pursuant to the protections and terms provided by the Agreement, on October 3, 2016, Mr. Woods entrusted Antiquorum with his Patek Philippe Watch #5213. On December 8, 2016, Antiquorum sold the property to a purchaser pursuant to the terms of the Agreement. The proceeds due to Mr. Woods from this sale are $300,000.

6. The Agreement provides:

> 1.8 <u>Statement of Account: Payment of Sale Proceeds.</u> Antiquorum shall prepare a statement detailing the Property that was sold and /or not sold, within 14 days of the date of auction and/or private treaty. If the statement shows a balance in favor of the Consignor, assuming Antiquorum has received full payment from the purchaser of the Property, then Antiquorum shall pay the balance due to the Consignor beginning 40 days after the date of the sale of the auction and/or private treaty. The Consignor hereby acknowledges that the payment to Consignor maybe delayed in the event of delay settling the purchaser's account. If the statement of account shows a balance in favor of Antiquorum, the Consignor shall pay the balance due to Antiquorum within 14 days after the date of auction and/or private treaty. To the extent that a payment hereunder is to be made in any currency other than currency agreed upon in the consignment agreement, such payment shall be calculated using the exchange rate published by the bank designated by Antiquorum on the day of the auction.

7. Pursuant to the terms of the Agreement, Mr. Woods should have received "a statement detailing the Property that was sold [] within 14 days of the auction . . ." This statement was due to Mr. Woods as of December 22, 2016.

8. The Agreement also states that "then Antiquorum shall pay the balance due to the Consignor beginning 40 days after the date of the sale of the auction . . ." Here, the date of the auction was December 8, 2016. Mr. Woods was due the full balance as of January 17, 2017.

9. On March 6, 2017, Michael Levine, counsel for Antiquorum, sent Mr. Woods an email which stated that Antiquorum "does not dispute that the sum of $300,000 is owed to you [Mr. Woods], and that promises to pay the same have heretofore been made". However, Mr. Levine went on to say that "internal issues with a contractual investor have made it impossible to tender those funds at this time" and that Antiquorum was "determining the best manner to resolve those issues so that the funds can be freed up to make payment to you, with interest." On March 16, 2017, nearly two months after Mr. Woods should have received the balance of the proceeds from the sale of his property and still had not, Michael Levine wrote an additional email to Mr. Woods in which he reiterated that his "client does not dispute the validity of the sum owed to [him]." All emails between Mr. Woods and Mr. Levine are attached hereto collectively as **Exhibit 2**.

10. Mr. Woods continued with is best efforts for an amicable solution with Antiquorum. To that end, he contacted Saori Omura, an employee of Antiquorum, to ascertain the status of the proceeds of the sale and when Mr. Woods could expect his payment pursuant to the terms of the Agreement. All email correspondence between Mr. Woods and Ms. Omura is attached hereto collectively as **Exhibit 3**. Mr. Woods communicated with Ms. Omura throughout the months of March and April of 2017 and learned that Antiquorum had a

disagreement with one of its investors. This disagreement is what Antiquorum is pointing to as the reason for its failure to pay Mr. Woods the amount he is owed pursuant to the Agreement.

11. On March 31, 2017, Ms. Omura sent Mr. Woods an email wherein she indicated that "we are near resolving this dispute with the investor, and we are most likely going to have access to the funds for your payment end of next week." *See* Exhibit 3. No funds came within the first week of April of 2017. On April 7, 2017, Ms. Omura sent Mr. Woods another message stating that "our CEO . . . told me that we are waiting for the funds to hit our account" in response to Mr. Woods' inquiry that same day questioning when he could expect to receive his payment. *See* Exhibit 3. Despite these reassurances, Mr. Woods still had not been paid so on April 11, 2017, he again emailed Ms. Omura inquiring as to the payment status. *See* Exhibit 3. Ms. Omura responded that the CEO "says we are still currently waiting for the funds to reach our account, but it should come through this week. So to answer your question regarding the timing, we are most likely unable to make the payment to you tomorrow but we hope to make it happen in the next few days." *See* Exhibit 3.

12. Mr. Woods received no further communication or payment of the proceeds within "the next few days" from his April 11, 2017 correspondence with Ms. Omura. Accordingly, on April 21, 2017, counsel for Mr. Woods sent a demand letter to Mr. Levine. *See* April 21, 2017 letter from G. Jones to M. Levine, attached hereto as **Exhibit 4**. Counsel for Mr. Woods indicated that should payment not be received within ten days of the date of the letter, Mr. Woods would be forced to file suit. To date, no such payment has been forthcoming.

13. In a last ditch effort to avoid having to file suit for the proceeds of the auction of Mr. Woods' watch, Mr. Woods reached out to Ms. Omura one final time on May 2, 2017 asking

about the status of his payment. He was yet again assured that "we are expecting funds some time this week . . ." *See* Exhibit 3.

14. As of May 4, 2017, the payment due and owing to Mr. Woods in the amount of $300,000 is 107 days late.

15. Although Antiquorum points to this investor dispute as its reason for not fulfilling its contractual obligation to pay the proceeds of the sale of the watch at auction, Antiquorum has held two successful auctions since the December auction in question. These auctions occurred in February and March of 2017. The price list for these auctions is publically available through Antiquorum's website. The price list of the February and March auctions are available at the following URLs: http://www.antiquorum.com/catalog/auctions/new-york-2017-02-23/price-list; and http://www.antiquorum.com/catalog/auctions/hong-kong-2017-3-18/price-list. A printout of the price lists for both February and March is attached hereto as **Exhibit 5.**

16. Antiquorum's dispute with one of its investors has no bearing on its obligations under its Agreement with Mr. Woods. Notwithstanding this, given the proceeds from the most recent auctions in February and March, Antiquorum has the funds to fulfill its obligations to Mr. Woods pursuant to the terms of the Agreement.

## COUNT I

### Breach of Contract

17. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

18. Antiquorum entered into a Consignment Agreement with Mr. Woods wherein it agreed to sell Mr. Woods' Patek Philippe Watch #5213 and provide the proceeds of that sale to Mr. Woods.

19. Mr. Woods accepted this Agreement and, under the protections provided by the Agreement, he released his property to Antiquorum.

20. Antiquorum breached that Agreement by failing to provide Mr. Woods with the proceeds from the sale of his property within the time frame required. Moreover, not only is Antiquorum's payment untimely, but also Antiquorum has yet to pay the proceeds from the sale of the property at all.

21. Consequently, Mr. Woods has been damaged by Antiquorum's breach of its Consignment Agreement with Mr. Woods.

## COUNT II

### Detrimental Reliance

22. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

23. Antiquorum made a clear and definite promise that, in exchange for Plaintiff's delivery of the Patek Philippe watch and the sale of the same, he would be due $300,000 from the proceeds of that sale.

24. Defendant reasonably expected that the offer of the proceeds from the sale of the Patek Philippe Watch would induce Plaintiff into transmitting the property to Antiquorum.

25. Plaintiff did actually deliver the Patek Philippe Watch in reliance on the promise of receiving the proceeds from its sale within 40 days of that sale to his detriment as those proceeds have never been forthcoming.

## COUNT III

### Fraudulent Misrepresentation

26. Plaintiff incorporates by reference all previous paragraphs as if fully set forth

herein.

27. Antiquorum falsely represented to Plaintiff that it would deliver the proceeds of the sale of the Patek Philippe Watch within 40 days of its sale.

28. Defendant made this representation recklessly, without regard for whether it would in fact fulfill its obligation of delivering the proceeds.

29. Plaintiff justifiably relied on Defendant's representations and was damaged as a result of those representations being false.

## COUNT IV

### Unjust Enrichment

30. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

31. Plaintiff conferred a benefit on Defendant when he delivered the Patek Philippe Watch in reliance upon Defendant's Agreement that once the property was sold at auction, Defendant would deliver the proceeds of that sale to Plaintiff.

32. Defendant knew and appreciated this benefit as it regularly conducts similar auctions to the one at issue in this case.

33. Defendant retained this benefit without payment for its value.

34. Consequently, Plaintiff was damaged.

## COUNT V

### Constructive Trust

35. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

36. Antiquorum falsely represented to Plaintiff that, if Plaintiff entered into the Agreement and it sold the Patek Philippe Watch, it would deliver the proceeds of the sale of that watch within 40 days of its sale.

37. This fraudulent representation caused Plaintiff to deliver his property to Defendant.

38. On December 8, 2016, Defendant sold Plaintiff's property and collected the proceeds of that sale. However, Defendant, in failing to properly pay the proceeds of the sale to Plaintiff, has acquired this property through fraud, misrepresentation and/or other improper methods.

39. Defendant was unjustly enriched by wrongfully acquiring Plaintiff's property.

40. As a result of the unjust enrichment of Defendant through acquiring Plaintiff's property, Plaintiff suffered direct harm.

41. Accordingly, Plaintiff respectfully requests the following:

   a. That the Court charge upon Defendant a constructive trust consisting of the property and proceeds of the sale of the property at issue in this case;

   b. That the Court enter judgment in favor of Plaintiff and against Defendant, and award damages in the amount of $300,000;

   c. That the Court award Plaintiff such other and further relief as in law and justice he may be entitled to receive.

WHEREFORE, Plaintiff Andrew Woods respectfully requests that this Court enter judgment in its favor against Defendant Antiquorum USA, Inc. and award Mr. Woods full payment of the proceeds of the sale totaling $300,000.00 plus interest, costs, and reasonable attorneys' fees as well as any other damages or costs this Court sees fit to award.

Respectfully submitted,

*Gary R. Jones* DMV
_____
Gary R. Jones

*Danielle M. Vranian*
_____
Danielle M. Vranian
Baxter, Baker, Sidle, Conn & Jones, P.A.
120 East Baltimore Street, Suite 2100
Baltimore, Maryland 21202
(410) 230-3800 (voice)
(410) 230-3801 (facsimile)

**Attorneys for Plaintiff**

4828-1916-7560, v. 1